# EXHIBIT 7

SUPREME COURT OF BRITISH COLUMBIA
SEAL
17-Mar-23
Vancouver
REGISTRY

Court File No. VLC-S-S-231975 No.
Vancouver Registry

In the Supreme Court of British Columbia

Between

FOTMER CORPORATION S.A.

PETITIONER

and

TILRAY BRANDS, INC.

RESPONDENT

## PETITION TO THE COURT

ON NOTICE TO:

Tilray Brands, Inc.
1100 Maughan Road
Nanaimo, BC, Canada
V9X1J2

c/o DLA Piper (Canada) LLP
2800 – 666 Burrard Street
Vancouver, BC Canada
V6C 2Z7

**This proceeding is started by the Petitioner for the relief set out in Part 1 below.**

If you intend to respond to this petition, you or your lawyer must

(a) file a response to petition in Form 67 in the above-named registry of this court within the time for response to petition described below, and

(b) serve on the petitioner

(i) 2 copies of the filed response to petition, and

(ii) 2 copies of each filed affidavit on which you intend to rely at the hearing.

**Orders, including orders granting the relief claimed, may be made against you, without any further notice to you, if you fail to file the response to petition within the time for response.**

**Time for response to petition**

A response to petition must be filed and served on the petitioner,

(a) if you were served with the petition anywhere in Canada, within 21 days after that service,

(b) if you were served with the petition anywhere in the United States of America, within 35 days after that service,

(c) if you were served with the petition anywhere else, within 49 days after that service, or

(d) if the time for response has been set by order of the court, within that time.

| | |
|---|---|
| (1) The address of the registry is: | 800 Smithe Street<br>Vancouver, BC |
| (2) The ADDRESS FOR SERVICE of the petitioner is: | BORDEN LADNER GERVAIS LLP<br>1200 Waterfront Centre<br>200 Burrard Street<br>P.O. Box 48600<br>Vancouver, British Columbia<br>V7X 1T2<br>Attention: Sarah K McEachern |
| Fax number address for service (if any) of the petitioner: | None |
| E-mail address for service (if any) of the petitioner: | None |
| (3) The name and office address of the petitioner's lawyer is: | BORDEN LADNER GERVAIS LLP<br>1200 Waterfront Centre<br>200 Burrard Street<br>P.O. Box 48600<br>Vancouver, British Columbia<br>V7X 1T2<br>Attention: Sarah K McEachern |

## CLAIM OF THE PETITIONER

### PART 1: ORDERS SOUGHT

1. The Petitioner, Fotmer Corporation S.A. ("**Fotmer**") seeks:

   (a) an Order appointing Professor Jeffrey Waincymer; or in the alternative, Mr. James Morrison; or in the further alternative, Mr. Simon Greenberg; or in the further alternative, any person that the Court in its duly exercised discretion will see fit to appoint as arbitrator, as sole arbitrator in the arbitration between the Petitioner, Fotmer, and the Respondent, Tilray Brands Inc. ("**Tilray**"), under section 11 of the *International Commercial Arbitration Act*, R.S.B.C. 1996, c. 233. (the "***ICAA***");

   (b) Costs; and

   (c) Such further and other relief as the Court considers just and appropriate.

### PART 2: FACTUAL BASIS

**Overview**

2. The Petitioner Fotmer and the Respondent Tilray are parties to a Raw Material Purchase Agreement ("**RMPA**") that contains an expedited arbitration agreement. The arbitration agreement contemplates the appointment of an arbitrator within 15 days of the fulfilment of the preconditions to arbitration as well as the rendering of a final award within 30 days of the appointment of the arbitrator.

3. A dispute arose between the parties and the preconditions to arbitration were satisfied on 28 December 2022. Since that date, Fotmer has attempted to jointly appoint an arbitrator with Tilray.

4. It is now over two months since the expiry of the time period within which the parties were to mutually appoint an arbitrator and the parties have not yet appointed an arbitrator. With this Petition, Fotmer seeks an order from the Chief Justice appointing an

arbitrator in this matter so that the arbitration may proceed as originally agreed by the parties to the RMPA.

**The Parties**

5. Fotmer is a corporation based in Uruguay with an address at Parque de las Ciencias, Ruta 101, km 23,500 Canelones, Uruguay. Fotmer is a medical cannabis cultivator and extractor supplying markets in North America, Europe, and the Middle East.

6. Tilray is a global company incorporated under Delaware law that carries on business in Canada and has an address for service at 1100 Maughan Road, Nanaimo, BC, Canada, V9X1J2, pursuant to the RMPA.

(collectively, the "**Parties**")

**The Raw Material Purchase Agreement**

7. On or around 22 May 2019, Fotmer and Tilray entered into the RMPA whereby Tilray would purchase medical cannabis supplied by Fotmer. The RMPA set out certain terms relating to the quantity and the schedule for the purchase and delivery of Fotmer's products and the framework for determining the purchase price of each shipment.

***Affidavit #1 of Federico Sasson, 17 February 2023 ("Sasson Affidavit #1"), Exhibit A, NoA Exhibit C-3, pp. 30-43***

8. Section 16 of the RMPA states that the law of British Columbia is the governing law of the agreement and that the Parties submit to the non-exclusive jurisdiction of the courts of British Columbia.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 38***

9. Section 21 of the RMPA is a "**Dispute Resolution Clause**". Section 21(b) of the RMPA contains an agreement between the parties to proceed to an expedited arbitration in the event that certain dispute resolution measures in s. 21(a) do not resolve the issues between the parties (the "**Arbitration Agreement**"):

> **21**. Dispute Resolution. Other than in connection with any temporary, injunctive or any other similar such relief sought by any party, any dispute, controversy or claim between or among the

> parties under or in connection with this Agreement, including a dispute relating to the effectiveness, validity, interpretation, implementation, termination, cancellation or enforcement of this Agreement or any right, duty or obligation arising hereunder, or the relationship of the parties (each a "Dispute") will be resolved in the following manner:
>
> **a.** The Parties will first attempt in good faith to resolve and settle such Dispute in accordance with the terms of this Section 21. In the event a Dispute arises, any Party will have the right to notify the other party to such Dispute that it has elected to implement the procedures set forth in this Section 21. Within seven (7) days after delivery of any such notice by one Party to the other Party regarding a Dispute, the parties involved in such Dispute will meet at a mutually agreed time and place to attempt, with diligence and good faith, to resolve and settle such Dispute. The Parties will record any resolution in writing, which writing, when approved by the Parties, will be final and binding.
>
> **b**. Should mutual resolution and settlement not be obtained at the meeting of the Parties for such purposes or should no such meeting take place, then the Dispute will proceed to arbitration by any party to the Dispute giving notice to the other party. Within fifteen (15) days from the termination of the initial mutual resolution and settlement period provided in Section 21(a), the Parties will jointly appoint one arbitrator to conduct the arbitration. The Parties to such arbitration agree to proceed with such arbitration as expeditiously as is practical in the circumstances, but in any event the arbitration must be completed within thirty (30) days of the appointment of the arbitrator. The arbitration will be governed by the Arbitration Act (British Columbia). The determination of the arbitrator will be in writing and will be final and binding on the Parties. The cost of the arbitration will be borne equally by the Parties unless the arbitrators determine otherwise.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, pp. 39-40***

10. The Dispute Resolution Clause includes the following terms:

    (a) The Parties agree to first attempt to resolve any dispute in the following manner in accordance with s. 21(a):

        i) A Party will notify the other Party that it has elected to implement the dispute resolution measures under s. 21.

        ii) The Parties will meet within seven days of the above contemplated notification and attempt to resolve the dispute.

(b) If the Parties fail to resolve their dispute after the meeting contemplated in s. 21(a), then the dispute will proceed to arbitration by any party to the dispute giving notice to the other party.

(c) The Parties will jointly appoint an arbitrator within 15 days of the termination of the meeting contemplated in s. 21(a).

(d) The Parties agree to proceed with the arbitration as expeditiously as is practical in the circumstances, but in any event the arbitration must be completed within 30 days of the appointment of the arbitrator.

(e) The arbitration will be governed by the British Columbia "Arbitration Act."

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, pp. 39-40***

11. The addresses for notice of both parties are set out on the signature page of the RMPA as follows:

(a) The address for notice for Tilray is 1100 Maughan Road, Nanaimo, BC, Canada, V9X1J2.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 41***

(b) The address for notice for Fotmer is Zona Franca, Parque de las Ciencias, Ruta 101, km 23,500 Canelones, Uruguay.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 41***

**Commencement of Arbitration**

12. In late 2021 and early 2022, disputes arose between the Parties concerning the subject matter of the RMPA (the "**Dispute**").

***Sasson Affidavit #1, Exhibit A, pp. 5-6***

13. Fotmer has satisfied the preconditions to commencing arbitration set out in the RMPA.

***Sasson Affidavit #1, Exhibit A, pp. 15-17***

14. On or about 20 December 2022, Fotmer emailed Tilray written notification of a dispute pursuant to s. 21(a) of the RMPA (the "**Dispute Notice**"), which attached a power of attorney of Fotmer, along with a draft of the Notice of Arbitration. In the Dispute Notice, Fotmer invited Tilray to meet at a mutually agreed time and place to attempt to resolve the Dispute.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-26, p. 140-170***

15. Fotmer also delivered the Dispute Notice to Tilray by courier on 28 December 2022.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-28, pp. 173-174***

16. On or about 23 December 2022, Tilray responded to Fotmer's 20 December 2022 email enclosing the Dispute Notice and confirmed Tilray's availability to meet with Fotmer in New York on 28 December 2022 (the "**Meeting**").

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-29, pp. 175-176***

17. Marlene Wette and Axel Benjamin Herzberg of Bodenheimer, counsel for Fotmer, prepared signed statements following the Meeting. In these statements, Ms. Wette and Mr. Herzberg each confirmed that at the outset of the Meeting the parties agreed the Meeting was the meeting contemplated in s. 21(a) of the RMPA.

***Sasson Affidavit #1, Exhibit A, NoA Exhibits C-31 & C-32, pp. 186, 188***

18. In his affidavit in support of this Petition, Mr. Federico Sasson, Country Manager to Fotmer, also states that he attended the Meeting in New York and that the parties agreed that the Meeting was to be considered the meeting contemplated in s.21(a) of the RMPA.

***Sasson Affidavit #1, para. 14***

19. Through their respective statements, Ms. Wette, Mr. Herzberg, and Mr. Sasson, each confirm that the parties were unable to settle the Dispute during the Meeting.

***Sasson Affidavit #1, para. 15, Exhibit A, NoA Exhibits C-31 & C-32, pp. 186, 188***

20. On or about 4 January 2023, Fotmer emailed a Notice of Arbitration dated 4 January 2023 (the "Notice of Arbitration") to Tilray's in-house counsel.

***Affidavit #1 of Margaret MacAulay dated 17 March 2023 ("MacAulay Affidavit #1"), Exhibit A, p. 1***

21. On or about 11 January 2023, Fotmer served the Notice of Arbitration on Tilray at Tilray's address for notice in Nanaimo, BC, as set out in the RMPA.

***MacAulay Affidavit #1, Exhibit B, pp. 3-4***

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 41***

22. Paragraph 64 of the Notice of Arbitration proposed four possible arbitrators to act as sole arbitrator between the Parties all of whom were based in the United States of America ("**Fotmer's Initial Proposed Arbitrators**").

***Sasson Affidavit #1, Exhibit A, p. 18***

23. Consistent with the objective of proceeding expeditiously in accordance with the Arbitration Agreement, Fotmer contacted Fotmer's Initial Proposed Arbitrators to provide them with high level information on the nature of the dispute, and obtain their conflict clearance and indication of availability. Each of Fotmer's Initial Proposed Arbitrators confirmed that they were available and prepared to work within the timeframe contemplated by the Arbitration Agreement.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-33, pp. 190-226***

24. On 11 January 2023, following service of the Notice of Arbitration, counsel for Fotmer sent a letter to Tilray, reminding them of Fotmer's Initial Proposed Arbitrators and requesting that Tilray provide comments on the proposed arbitrators and along with any of its own proposed arbitrators. The letter also indicated that if the Parties were unable to

agree on an arbitrator promptly, Fotmer was prepared to proceed to court in British Columbia to have the arbitrator appointed.

***MacAulay Affidavit #1, Exhibit C, pp. 5-6***

25. On 24 January 2023, counsel for Fotmer sent a letter to John Landry KC of DLA Piper's Vancouver office, counsel for Tilray, inquiring whether the latter had been formally retained and urging counsel for Tilray to provide input on arbitrator selection so that the arbitration could proceed.

***MacAulay Affidavit #1, Exhibit D, p. 7***

26. On 25 January 2023, in an email to counsel for Fotmer, counsel for Tilray confirmed that DLA Piper had been retained by Tilray. Counsel for Tilray also stated his client's position that the arbitrator in the matter should be admitted to the bar in British Columbia. Tilray's counsel did not propose any alternative arbitrators at that time.

***MacAulay Affidavit #1, Exhibit E, pp. 10-11***

27. That same day, counsel for Fotmer responded to counsel for Tilray noting that the Arbitration Agreement did not expressly require an arbitrator licensed in British Columbia, and further, that s. 11(9) of the *ICAA* prohibited the Chief Justice from appointing a sole arbitrator who was of the same nationality as one of the parties to the arbitration. Counsel for Fotmer also stressed urgency in appointing an arbitrator, as the parties had expressly contemplated an expedited schedule in the Arbitration Agreement and the deadline for arbitrator appointment pursuant to the Arbitration Agreement expired on 12 January 2023.

***MacAulay Affidavit #1, Exhibit E, pp. 9-10***

28. On 30 January 2023, after receiving no response from Tilray, counsel for Fotmer again emailed counsel for Tilray requesting comments on Fotmer's Initial Proposed Arbitrators.

***MacAulay Affidavit #1, Exhibit E, p. 8***

29. On 31 January 2023, counsel for Tilray emailed counsel for Fotmer, stating Tilray's preference for an arbitrator with knowledge of British Columbia's arbitration legislation. Counsel for Tilray also added that as Tilray is incorporated in Delaware, s. 11(9) of the

*ICAA* precludes an American from acting as an arbitrator, but not a Canadian. Counsel for Tilray proposed three names of Canadian lawyers as potential arbitrators. ("**Tilray's Proposed Arbitrators**" and, collectively with Fotmer's Initial Proposed Arbitrators, the "**Proposed Arbitrators**")

***MacAulay Affidavit #1, Exhibit F, pp. 15-16***

30. In the same email, counsel for Tilray raised concerns that few arbitrators would agree to, or be available for, the timeline contemplated by the Arbitration Agreement. Counsel for Tilray also claimed that the agreed upon timeline was not conducive to obtaining expert reports and suggested that the parties postpone appointing an arbitrator until the proposed arbitrators could be canvassed for their respective availability.

***MacAulay Affidavit #1, Exhibit F, pp. 15-16***

31. On 3 February 2023, counsel for Fotmer responded to counsel for Tilray disagreeing that it was not possible to find an arbitrator who could conduct the arbitration within the timeline contemplated by the Arbitration Agreement. Counsel for Fotmer pointed out that it had already located four qualified potential arbitrators that were available to arbitrate the dispute within the applicable timeframe.

***MacAulay Affidavit #1, Exhibit F, pp. 14-15***

32. During the month between 6 February 2023 and 7 March, there were a number of exchanges between counsel for Fotmer and Tilray in an attempt to resolve the issue of arbitrator appointment, including a videoconference on 21 February 2023 and a telephone conference on 1 March 2023. Unfortunately, the parties were not able to find common ground.

***MacAulay Affidavit #1, Exhibits F, G, H, pp. 12-35***

33. On 2 March 2023, counsel for Fotmer provided counsel for Tilray two possible mechanisms for resolving the matter of arbitrator appointment. One method involved the "list method" using a ranking and veto system to appoint an arbitrator. The other method involved engaging the Vancouver International Arbitration Centre as the appointing

authority. Under both proposed options, the parties would agree to not list an arbitrator from Uruguay, the United States, or a Canadian currently based in Canada.

***MacAulay Affidavit #1, Exhibit H, pp. 32-33***

34. On 7 March 2023, counsel for Tilray responded, declining both arbitrator appointment mechanisms proposed by Fotmer and restating its position that the arbitrator should be one of the three arbitrators originally proposed by Tilray's counsel.

***MacAulay Affidavit #1, Exhibit H, pp. 30-31***

**Arbitrator Qualifications**

35. Fotmer proposes that the arbitrator appointed to determine this case should have the following qualifications:

(a) Experience as an arbitrator in international arbitration (not only domestic arbitration).

(b) Experience with the application of the United Nations Convention on Contracts for the International Sale of Goods ("**CISG**"): both Fotmer and Tilray are from signatory states to the CISG, and the Parties did not contract out of the CISG in the RMPA (and the CISG is expressly incorporated into British Columbia's *International Sale of Goods Act*, RSBC 1996, c-236); thus, the CISG applies to the RMPA. In this respect, the arbitrator should be from a jurisdiction that is a signatory to the CISG and the arbitrator should have experience applying the CISG.

(c) Available to carry out the arbitration in the expedited 30-day time frame agreed to by the Parties in the Arbitration Agreement.

(d) Fluent in English as although the RMPA does not specify the language of the arbitration, the RMPA is in English and the Parties have been corresponding in English.

(e) Familiar with, and ideally qualified in, a jurisdiction that is based on English common law.

36. Given Tilray's seeming objection to the appointment of an American arbitrator, Fotmer has contacted and canvassed the availability of several additional arbitrators that are experienced and qualified to sit as arbitrator in this case and that have neutral nationality (they are not Uruguayan, Canadian, or American). All three of these arbitrators have cleared conflicts and are available to be appointed on this case:

(a) James Morrison
Peter & Kim
Level 7, 167 Macquarie Street
Sydney NSW 2000
Australia

(b) Simon Greenberg
Clifford Chance, Paris
1 rue d'Astorg
CS 60058
75377 Paris Cedex 08
France; and

(c) Professor Jeffrey Waincymer
National University of Singapore
Faculty of Law
Singapore/Australia

***MacAulay Affidavit #1, Exhibits I, J, K, L, M, N, pp. 37-56***

**PART 3: LEGAL BASIS**

**Legislative Framework**

36. The underlying arbitration is an international commercial arbitration to which the *ICAA* applies (*ICAA*, 1(3)(a)).

37. Section 11(5) of the *ICAA* provides that a party may request that the Chief Justice appoint an arbitrator where the parties fail to agree on an arbitrator.

> 11(2) Subject to subsections (6) and (7), the parties are free to agree on a procedure for appointing an arbitral tribunal.

> (5) Failing any agreement referred to in subsection (2), in an arbitration with a sole arbitrator, if the parties fail to agree on the arbitrator, the appointment must be made, on request of a party, by the Chief Justice.

38. Pursuant to s. 11(9) of the *ICAA*, the Chief Justice must not appoint a sole arbitrator who is the same nationality as that of any of the parties unless the parties agree otherwise.

> 11(9) Unless the parties have previously agreed to the appointment of a sole or third arbitrator who is of the same nationality as any of the parties, the Chief Justice must not appoint a sole or third arbitrator who is of the same nationality as that of any of the parties.

39. The *ICAA* is based on the UNCITRAL Model Law on International Commercial Arbitration (known as the "**Model Law**"). Pursuant to ss. 6(1) and 6(2) of the *ICAA,* any court seeking to interpret the *ICAA* must have regard to the Model Law, relevant commentary, and the general principles of law arising from the international origins of the *ICAA*.

40. Article 11(5) of the Model Law provides in relevant part:

> ... The court or other authority, in appointing an arbitrator, shall have due regard to any qualifications required of the arbitrator by the agreement of the parties and to such considerations as are likely to secure the appointment of an independent and impartial arbitrator and, in the case of a sole or third arbitrator, shall take into account as well the advisability of appointing an arbitrator of a nationality other than those of the parties.

***UNCITRAL Model Law on International Commercial Arbitration: 1985, with amendments as adopted in 2006 (New York: UN, 2008), pp. 6-7***

41. Rules 1-2(4)(a) and 2-1(2)(b) of the *Supreme Court Civil Rules* state that where an enactment authorizes an application to a court or judge the application must be brought by petition.

42. The parties agreed on a procedure to appoint a sole arbitrator in the event of a dispute under s. 21(b) of the RMPA. The 15-day period contemplated for the appointment of an arbitrator under the Arbitration Agreement has now passed. The Parties have been unable to appoint an arbitrator under the Arbitration Agreement. The Chief Justice now has the power to appoint an arbitrator pursuant to Fotmer's request and s. 11(5) of the *ICAA*.

**Arbitrator of Neutral Nationality**

43. The arbitrator appointed to decide the dispute must be independent and impartial. Appointing an arbitrator of neutral nationality is a fundamental aspect of the arbitrator's perceived impartiality.

44. The practice under most international arbitration rules is that the sole or presiding arbitrator will almost certainly be someone of a different nationality from that of the parties to the dispute; national neutrality of the arbitrator is the prevailing practice in international commercial arbitration. The concern with appointing an arbitrator of the same nationality as one of the parties is that the arbitrator may be biased or perceived to be biased toward the party of the same nationality, notwithstanding the obligation to be independent and impartial.

***Ilhyung Lee, "Practice and Predicament: The Nationality of the International Arbitrator (with Survey Results)" (2008) 31:3 Fordham Int'l LJ 603 at pp. 612-614.***

***Redfern and Hunter on International Arbitration, 4th ed (London, UK: Sweet & Maxwell, 2004) at pp. 202-203***

45. As a result of the importance of national neutrality, where the law of the contract is the same as that of one of the parties, the sole arbitrator will likely not be qualified in that system of law. That is not an uncommon result in international arbitration. Desiring that the arbitrator be qualified in the jurisdiction of the substantive law of the contract does not trump the need for an unbiased and impartial arbitrator of neutral nationality.

***Redfern and Hunter on International Arbitration, 4th ed (London, UK: Sweet & Maxwell, 2004) at p. 203***

46. Indeed, pursuant to s. 11(9) of the *ICAA*, the arbitrator appointed by the Chief Justice cannot be the nationality of one of the parties.

47. Fotmer is a Uruguayan entity and is not requesting the appointment of a Uruguayan arbitrator. The parties disagree on the nationality of Tilray for the purposes of determining national neutrality of the arbitrator. Tilray appears to take the position that since it is incorporated in Delaware only an American arbitrator is prohibited and that a Canadian arbitrator should be selected because the substantive law of the RMPA is British Columbia law. Fotmer disagrees.

48. The *ICAA* defines whether an arbitration is international based not on where the parties are incorporated, but on the following criteria:

(a) Where the parties have their places of business;

(b) The location where a substantial part of the obligations of the commercial relationship is to be performed;

(c) The place with which the subject matter of the dispute is most closely connected.

49. Tilray is a global company which lists divisions on its website in Australia and New Zealand; Canada; the EU; and Latin America. Tilray may be incorporated in Delaware but for the purposes of the arbitration and the appointment of the arbitrator it is most closely connected with Canada. The entity that entered into the RMPA with Fotmer operates as a Canadian entity and is closely tied to Canada, as exemplified by the following factors:

(a) Tilray has its place of business in British Columbia;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 41***

(b) Tilray lists its address for service in the RMPA in British Columbia;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, p. 41***

(c) The performance of the RMPA is largely tied to Canada and the RMPA contains references throughout to Health Canada;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, pp. 31-33, 35, 38***

(d) Tilray agrees to hold all licenses, permits and authorisations required by law in Canada (RMPA, s.9(b));

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-3, pp. 34-35***

(e) Tilray lists its address on the title page of the Quality Agreement for Licensed Producer as Nanaimo, British Columbia;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-8, p. 59***

(f) Four out of the six key contacts listed in the Quality Agreement for Licensed Producer in Annex A are listed as located in Canada with the other two being in Portugal;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-8, p. 73***

(g) The Quality Agreement for Licensed Producer states that Tilray has a registered office at Suite 2400, 745 Thurlow Street, Vancouver, BC;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-8, p. 62***

(h) The definition of "business day" under section 2 of the Quality Agreement for Licensed Producer refers to Toronto, Vancouver, and Montevideo as reference points, but not to the United States;

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-8, pp. 63***

(i) Finally, the list of approved subcontractors in Annex D includes two Canadian companies and two Uruguayan companies, but none from the United States.

***Sasson Affidavit #1, Exhibit A, NoA Exhibit C-8, p. 80***

50. Fotmer is of the view that the Chief Justice must not appoint a Canadian arbitrator due to Tilray having a place of business in British Columbia, Canada being a place where a substantial part of the obligations of the RMPA are to be performed, and Canada being a place to which the subject matter of the dispute has a close connection. Ultimately, with

respect to the concept of national ties contemplated in the *ICAA*, Tilray should be considered Canadian.

51. Although Fotmer is agreeable to the appointment of an American arbitrator, Tilray seemingly is not. If Tilray objects to the appointment of an American arbitrator, then it may be necessary to appoint an arbitrator that is not Canadian, American, or Uruguayan. Fotmer has included the names of several additional proposed candidates that meet these criteria as set out above.

**The Importance of Neutral Nationality**

52. There is only one reported decision of the British Columbia Supreme Court that we were able to locate in which a Chief Justice was asked to appoint an arbitrator. In that case, *Quintette Coal Ltd. v Nippon Steep Corp.*, [1988] BCJ No. 492, Chief Justice McEachern appointed a Canadian chair to a three-arbitrator tribunal against the request of the Japanese party and despite one of the parties being from British Columbia.

***Quintette Coal Ltd. v Nippon Steel Corp., [1988] BCJ No. 492, p. 2***

***Gary Born, International Commercial Arbitration, Third Edition (New York: Kluwer Law International, 2023) at §12.03[F][1]***

53. Shortly after that decision was rendered, the *ICAA* was amended to include the provision expressly stating that the arbitrator appointed by the Chief Justice must not be of the nationality of any of the parties.

***Miscellaneous Statutes Amendment Act (No. 2), SBC 1988, c 46, s. 35(b)***

***Gary Born, International Commercial Arbitration, Third Edition (New York: Kluwer Law International, 2023) at §12.03[F][1], footnote 481***

54. The purpose of this provision in the *ICAA* and the Model Law is perceived impartiality through national neutrality, particularly where an arbitrator is being appointed by a Court. International arbitration scholar, Gary Born, has commented that national neutrality of the arbitrator is critical:

> Almost all leading institutional arbitration rules contain limitations on the nationality of sole and presiding arbitrators (but generally not on the nationality of co-arbitrators). These

> limitations are designed to implement one of the basic objectives of international arbitration, being to provide an internationally-neutral means of resolving disputes between parties from different countries. In the words of one commentator, "as a symbol of impartiality, the national neutrality of an arbitrator is a vital factor for the proper functioning of a good arbitral tribunal."

***Gary Born, International Commercial Arbitration, Third Edition (New York: Kluwer Law International, 2023) at §12.04[A][1]***

55. It is advisable given the circumstances not to appoint an arbitrator of Uruguayan, Canadian, or American nationality (unless Tilray were to agree to the appointment of an American) due to the risk of the perception by Fotmer of partiality of a Canadian arbitrator towards Tilray.

56. It is critical that the sole arbitrator be perceived to be impartial by *both* parties to the arbitration. Tilray operates in Canada, its primary counsel in this matter is based in Canada, and its witnesses will likely be based in Canada. Regardless of the technical nationality of Tilray, for the purpose of fairness and neutrality it is not advisable to appoint a Canadian arbitrator in this case. The arbitrator should be scrupulously neutral and in this case that would mean not Uruguayan, Canadian, or American unless the parties agree otherwise.

**PART 4: MATERIAL TO BE RELIED ON**

1. Affidavit #1 of Margaret MacAulay, made on 17 March 2023.

2. Affidavit #1 of Federico Sasson, made on 17 February 2023.

The petitioner estimates that the hearing of the petition will take 2 hours.

Date: 17 March 2023

Signature of Sarah K. McEachern
☐ Petitioner ☑ lawyer for Petitioner

***To be completed by the court only:***

Order made

☐ in the terms requested in paragraphs ________________ of Part 1 of this petition

☐ with the following variations and additional terms:

________________________________________
________________________________________
________________________________________
________________________________________
________________________________________

Date: ________________ ________________________
Signature of ☐ Judge ☐ Master

No.
Vancouver Registry

In the Supreme Court of British Columbia

Between

FOTMER CORPORATION S.A.

PETITIONER

and

TILRAY BRANDS, INC.

RESPONDENT

**PETITION TO THE COURT**

**SKM/mm** **566985/000001**

BORDEN LADNER GERVAIS LLP
1200 Waterfront Centre
200 Burrard Street
P.O. Box 48600
Vancouver, British Columbia
V7X 1T2
Telephone: (604) 687-5744
Attn: Sarah K. McEachern